**In re BONDED JEWELRY CENTER, Debtor.**

**George W. LIEBMANN, Trustee, Plaintiff,**

**v.**

**Jack I. BROWN, Defendant.**

Bankruptcy No. 92–5–1111–JS.
Adversary No. 93–5030–JS.

United States Bankruptcy Court, D. Maryland.

Feb. 21, 1997.

Orbie R. Shively, George W. Liebmann, P.A., Baltimore, MD, for Plaintiff, George W. Liebmann, Trustee.

Michael L. Freilich, Michael Freilich & Assoc., P.A., Towson, MD, for Defendant, Jack I. Brown.

### ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

JAMES F. SCHNEIDER, Bankruptcy Judge.

For the reasons set forth in the Memorandum Opinion filed simultaneously herewith, the plaintiff/trustee's motion for summary judgment [P. 32] is hereby GRANTED. The trustee shall file a final calculation of the amount of the partnership deficiency within fifteen (15) days hereof, whereupon a money judgment in that amount will be entered against the defendant. Execution by the trustee upon the judgment shall be stayed pending further order of this Court. The defendant shall be afforded the opportunity of filing objections to claims on or before March 31, 1997, in default of which, this Court shall forthwith enter a final money judgment against the defendant. All objections to claims filed on or before that date shall be subject to adjudication by this Court.

SO ORDERED.

### MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AGAINST THE DEFENDANT FOR PARTNERSHIP DEFICIENCY

The plaintiff Chapter 7 trustee filed the instant motion for summary judgment [P. 32] upon the complaint for a judgment arising from a partnership deficiency. For the reasons stated, the motion will be granted.

### FINDINGS OF FACT

1. On February 12, 1992, three creditors filed an involuntary Chapter 7 bankruptcy petition in this Court against the debtor, Bonded Jewelry Center, a Maryland general partnership. On March 24, 1992, an order for relief [P. 14] was entered. George W. Liebmann was appointed Chapter 7 trustee by the Office of the U.S. Trustee.

2. On January 27, 1993, Mr. Liebmann filed the instant complaint against Bonded Jewelry Exchange, Ltd., Jay–Bee Diamonds & Jewelry, Inc., Two Sisters/Fine Jewelry, Inc., Jewels by Suzanne, Inc., Premier Jewelry, Inc., Jack I. Brown and Ellen "Suzanne" Brown. The complaint sought the avoidance of fraudulent transfers and conveyances, judgment for successor corporate liability, turnover of property, accounting, breach of fiduciary duty and judgment for partnership deficiency.

3. On March 5, 1993, Mr. Brown filed his answer to the complaint [P. 9], in which he contested the subject matter jurisdiction of this Court, filed a prayer for trial by jury [P. 10] and filed a motion for withdrawal of the reference by the U.S. District Court [P. 11].

4. By a memorandum opinion and order dated June 30, 1993 [P. 24], the U.S. District Court [Kaufman, D.J.] denied the motion to withdraw the reference, holding that "it is preferable for the Bankruptcy Court to de-

termine whether, in this case, core proceedings are involved in whole or in part; whether, if core proceedings are involved in whole or in part, it should conduct trial pending the completion of the interlocutory appeal in *In re Stansbury Poplar Place Inc.*, Adversary No. 92–5537–ESD, or delay trial pending completion of that appeal." In *Stansbury*, District Judge Frederic N. Smalkin had held that U.S. bankruptcy judges could properly conduct jury trials in core proceedings filed in the U.S. Bankruptcy Court.[1]

5. On September 1, 1995, the trustee filed the instant motion for partial summary judgment [P. 32] in which he alleged to be entitled to judgment as a matter of law against the defendant, Jack I. Brown, as sole remaining general partner of the debtor partnership, for a deficiency in the amount of $5,391,180.70, pursuant to the terms of 11 U.S.C. § 723(a).

6. The other defendants entered into a settlement with the trustee, which this Court approved by order dated July 3, 1996 [P. 57].

7. It is undisputed that Mr. Brown is the only remaining general partner of the debtor partnership.[2] The trustee sought to hold Mr. Brown responsible for a partnership deficiency in the amount of $5,391,180.70, *i.e.*, the difference between the actual distribution to unsecured creditors and the total amount of unsecured claims filed. The claims filed by unsecured creditors in this case totalled $5,543,264.68, as opposed to estate funds on deposit in the amount of $127,083.98. The trustee estimated a maximum recovery of only $25,000 from his settlement with the other defendants, which included his right to recover proceeds from the auction sale of estate assets and goodwill.

8. In his response [P. 40] to the motion, Mr. Brown admitted that he is the sole surviving partner of the debtor and that a partner is liable for the debts of the partnership. However, he disputed the dollar amount of 18 proofs of claim filed by unsecured creditors in the Bonded Jewelry case. The defendant continued to press his demand for a jury trial to contest the amounts of claims filed by creditors against the estate of Bonded Jewelry Center.

## CONCLUSIONS OF LAW

1. Section 723(a) of the Bankruptcy Code is applicable to the facts of this case and provides for the liability of a general partner to the bankruptcy trustee for the deficiency in the payment of claims by a debtor partnership. On the date that the instant adversary proceeding was commenced, Section 723(a) provided:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

11 U.S.C. § 723(a) (1992).[3] *See In re R.L. Kelly and Sons, Millers*, 125 B.R. 945, 949

---

**1.** The decision was affirmed by the U.S. Court of Appeals for the Fourth Circuit. *Official Committee of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122 (4th Cir.1993). Explicit authority for U.S. bankruptcy judges to conduct jury trials was granted by Congress in provisions of the Bankruptcy Reform Act of 1994. Pub.L. No. 103–394, § 112, 108 Stat. 4106 (1994). The undersigned bankruptcy judge conducted the first (and to date, the only) bankruptcy jury trial in the District of Maryland in the case of *Liebmann v. Curry (In re Branham)*, Adversary No. 94–5532–JS, a fraudulent conveyance action, tried in Baltimore on April 24–25, 1996.

**2.** At one time, Dorothy Brown held a one-third interest in the debtor partnership before her death on March 6, 1992. The defendant is now the sole surviving general partner. Statement of Financial Affairs ¶ 19.

**3.** The amendment to Section 723(a) by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702, 108 Stat. 4106 (1994), was not material to the facts in the instant case. The statute, as amended, now provides:

> If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner *to the extent that under applicable nonbankruptcy law such general partner is personally liable for such deficiency.*

11 U.S.C. § 723(a) (1996) (emphasis added). The amendment became effective on the date of enactment, October 22, 1994, and is prospective only and not applicable to pending cases. Pub.L. No. 103–394, § 702, 108 Stat. 4106 (1994); 4

(Bankr.D.Md.1991); *Tatge v. Chandler (In re Judiciary Tower Associates),* 175 B.R. 796, 801 (Bankr.D.D.C.1994); *Miller v. Spitz (In re CS Associates),* 160 B.R. 899, 906 (Bankr. E.D.Pa.1993); *Kipperman v. Yousif (In re Miramar Mall Ltd. Partnership),* 152 B.R. 631, 633 (Bankr.S.D.Cal.1993); *McGraw v. Betz (In re Bell & Beckwith),* 112 B.R. 863, 870 (Bankr.N.D.Ohio 1990).

■ 2. The personal liability of a general partner for partnership debts is determined in accordance with state law. *Judiciary Tower,* 175 B.R. at 801; *CS Associates,* 160 B.R. at 906–07; *Miramar Mall,* 152 B.R. at 633.

3. The law of Maryland regarding the liability of a partner is found in Section 9–307 of the Corporations and Associations Article of the Maryland Annotated Code, which provides:

All partners are liable:

(1) Jointly and severally for everything chargeable to the partnership under §§ 9–305 [debts arising out of the wrongful act of a partner] and 9–306 [debts arising out of a breach of trust by a partner]; and

(2) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

Md.Corps. & Ass'ns Code Ann. § 9–307. *See Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland,* 103 Md.App. 749, 769, 654 A.2d 949, 959 (1995); *Dominion National Bank v. Sundowner Joint Venture,* 50 Md.App. 145, 160, 436 A.2d 501, 509 (1981).

■ 4. Mr. Brown is personally liable for the partnership deficiency as a general partner of a partnership under Maryland law. Therefore, the trustee may collect from Mr. Brown as the only remaining general partner the difference between the actual distribution to unsecured creditors and the total amount of unsecured claims filed.

5. The only authority upon which counsel for Mr. Brown relied for his assertion that proofs of claim may not be employed to establish the amount of the partnership deficiency was the case of *United States v.*

*Ciampaglia,* 628 F.2d 632 (1st Cir.1980). *Ciampaglia* is a criminal case in which the defendant was charged with mail fraud and conspiracy to conceal property of a debtor. The First Circuit held that filed proofs of claim could not be used to establish the amount owed by the bankrupt to creditors for purposes of proving mail fraud and conspiracy. The *Ciampaglia* court held that proofs of claim were admissible to permit an inference that the debtor was not a typical, good faith business operation even though admission on this basis would likely raise an inference as to the amount owed to creditors. *Ciampaglia* is not applicable to the instant case. Here, the proofs of claim were offered for the purpose of proving the amount of the deficiency to unsecured claimants.

6. "A proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute prima facie evidence of the validity and amount of the claim." Fed.R.Bankr.P. 3001(f). *See Internal Revenue Service v. Levy (In re Landbank Equity Corporation),* 973 F.2d 265, 269 (4th Cir.1992); *Laptops Etc. Corporation v. District of Columbia (In re Laptops Etc. Corporation),* 164 B.R. 506, 522 (Bankr.D.Md.1993); *In re Coastal Carriers Corporation,* 128 B.R. 400, 404 (Bankr. D.Md.1991); *In re City of Capitals, Inc.,* 55 B.R. 634, 637 (Bankr.D.Md.1985).

7. "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a). *See In re Challa,* 186 B.R. 750, 754 (Bankr. M.D.Fla.1995); *In re Pennave Properties Associates,* 165 B.R. 793, 796 (E.D.Pa.1994); *Agricredit Corporation v. Harrison (In re Harrison),* 987 F.2d 677, 680 (10th Cir.1993); *McGraw v. Betz (In re Bell & Beckwith),* 112 B.R. 863, 869 (Bankr.N.D.Ohio 1990) (citing *Jahn v. Lamb (In re Lamb),* 36 B.R. 184, 189 (Bankr.E.D.Tenn.1983)).

■ 8. Mr. Brown has standing to object to claims as a party in interest." *See* 11 U.S.C. § 502(a). *See also In re Visiting*

*Collier on Bankruptcy* ¶ 723.01 n. 2 and ¶ 723.02    nn. 1, 2a (Matthew Bender 15th ed. 1996).

*Nurse Association,* 176 B.R. 748, 751 (Bankr. E.D.Pa.1995) (court recognized that standing to object to claims is conferred upon a party in interest and the term "party in interest" is to be broadly construed). If Mr. Brown wishes to object to a proof of claim, he must follow the procedure set forth in the Bankruptcy Rules. Rule 3007 provides:

> An objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing.

Fed.R.Bankr.P. 3007. Local Bankruptcy Rule 27(a) sets forth additional requirements:

> In addition to the service required by Federal Rules of Bankruptcy Procedure 9014 and 7004(b), the objecting party shall serve a copy of the objection to claim and memorandum in support, if any, upon the claimant at the address (and care of the individual) shown on the proof of claim, and shall so certify. The Objection shall advise the claimant conspicuously that:
>
> (1) within thirty (30) days of the date on the certificate of service of the objection, the claimant shall file and serve a responsive memorandum opposing the objection, together with any documents and other evidence the claimant wishes to attach in support of its claim, unless the claimant wishes to rely solely upon the proof of claim and responsive memorandum; and
>
> (2) an interested party may request a hearing that may be held in the Court's discretion.

Local R.Bankr.P. 27(a).

■ 9. Failure to comply with Bankruptcy Rule 3007 is grounds for overruling an objection to a claim. *See Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler),* 75 B.R. 979, 982 (Bankr.N.D.Tex.1987), *aff'd,* 106 B.R. 943 (N.D.Tex.1989) (court overruled objection to claim and allowed claim because debtor failed to comply with Rule 3007).

10. Mr. Brown did not follow the procedures for objecting to proofs of claim set forth in the Bankruptcy Rules. In fact, Mr. Brown failed to raise an objection of any kind

in the bankruptcy case. Accordingly, his objection to the proofs of claim in this adversary proceeding will not preclude the entry of summary judgment in favor of the trustee.

■ 11. This Court adopts the formula for calculating the partnership deficiency as set forth in *Miller v. Spitz (In re CS Associates),* 160 B.R. 899 (Bankr.E.D.Pa.1993):

Total of filed proofs of claim

- Adjustments (Disallowed, withdrawn, duplicate, reduced and amended claims)
= Adjusted total of claims
- Trustee's funds on hand
+ Unpaid administrative claims
= Deficiency

*Id.* at 910–11.

12. Judgment against the defendant in the instant adversary proceeding will be stayed for a brief period to permit the defendant to file objections in the bankruptcy case to the proofs of claim. In the event that such claims are disallowed, the judgment will then be reduced accordingly. *See CS Associates,* 160 B.R. at 910; *McGraw v. Betz (In re Bell & Beckwith),* 112 B.R. 863, 869 (Bankr. N.D.Ohio 1990) (citing *Jahn v. Lamb (In re Lamb),* 36 B.R. 184, 189 (Bankr.E.D.Tenn. 1983)).

13. In any event, the defendant is not entitled to a jury trial for the purpose of contesting the dollar amount of various claims.

14. In determining the existence of a right to a jury trial in bankruptcy proceedings, the Supreme Court in the case of *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), focused on the traditional Seventh Amendment distinction between legal and equitable causes of action as they existed in 18th century England. *See Granfinanciera,* 492 U.S. at 40–49, 109 S.Ct. at 2789–94, 106 L.Ed.2d at 40–45; *McGraw v. Betz (In re Bell & Beckwith),* 112 B.R. 863, 867 (Bankr.N.D.Ohio 1990). In concluding that in certain instances, there is a right to a trial by jury in a bankruptcy proceeding, the Supreme Court stated:

> ... The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." We have consistently inter-

preted the phrase "Suits at common law" to refer to "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830). Although "the thrust of the Amendment was to preserve the right to jury trial as it existed in 1791," the Seventh Amendment also applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty. *Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39 L.Ed.2d 260 (1974).

The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Tull v. United States,* 481 U.S. 412, 417–418, 107 S.Ct. 1831, 1835–1836, 95 L.Ed.2d 365 (1987) (citations omitted). The second stage of this analysis is more important than the first. *Id.,* at 421, 107 S.Ct. at 1837. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder. *Granfinanciera,* 492 U.S. at 40–42, 109 S.Ct. at 2789–90, 106 L.Ed.2d at 40–41.

15. Historically, the Court of Chancery, an equity court, presided over the winding up of partnerships and bills for the administration of partnership assets. *McGraw v. Betz (In re Bell & Beckwith),* 112 B.R. 863, 867 (Bankr.N.D.Ohio 1990) (citing G. Spence, *The Equitable Jurisdiction of the Court of Chancery* Ch. 21, § 2 at 665–66 (1846) and G. Bispham, *The Principles of Equity: A Treatise on the System of Justice Administered in the Courts of Chancery* Part III, Ch. 5, § 505 at 555–56 (4th ed. 1887)). In addition, when a partnership's assets were insufficient

to pay all of its creditors, a creditor's bill against the partners was an equitable action filed in the Court of Chancery. *Bell & Beckwith,* 112 B.R. at 867 (citing G. Bispham, *The Principles of Equity* Part III, Ch. 5, §§ 520–22 at 568–70).

16. Modern courts have consistently held that allowance or disallowance of a claim in bankruptcy falls within the broad equitable powers of a bankruptcy court. *See Pepper v. Litton,* 308 U.S. 295, 304–05, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *Canal Corporation v. Finnman (In re Johnson),* 960 F.2d 396, 404 (4th Cir.1992); *Ob/Gyn Solutions, L.C. v. Six (In re Six),* 80 F.3d 452, 457 (11th Cir. 1996); *In re Wizard Software, Inc.,* 185 B.R. 512, 517 (Bankr.E.D.Va.1995); *In re Beck Rumbaugh Associates, Inc.,* 114 B.R. 418, 420–21 (E.D.Pa.1990); *In re Comstock Financial Services, Inc.,* 111 B.R. 849, 855 (Bankr.C.D.Cal.1990).

■ 17. This Court concludes that the determination of liability of a general partner to the bankruptcy trustee for the deficiency of a debtor partnership under Section 723(a) is a core proceeding subject to the equitable powers of the bankruptcy court because the deficiency is based upon the allowance or disallowance of claims against the estate. *Accord Miller v. Spitz (In re CS Associates),* 160 B.R. 899 (Bankr.E.D.Pa.1993) (denying jury demand in Section 723 proceeding based on the legal/equitable claim distinction). *Contra Wilkey v. Inter–Trade, Inc. (In re Owensboro Distilling Co.),* 108 B.R. 572 (Bankr.W.D.Ky.1989) (upholding jury demand in Section 723 proceeding based on the public right/private right dichotomy as opposed to the legal/equitable claim distinction). Therefore, there is no right to a trial by jury in the instant case, and no grounds upon which to withdraw the reference.

■ 18. Fundamentally, the right to a jury trial depends upon the existence of genuine issues of material fact necessary for a jury to decide. *See* Fed.R.Civ.P. 56(c); Fed. R.Bankr.P. 7056; *Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995); *Miller v. FDIC,* 906 F.2d 972, 973 (4th Cir.1990). Because there are no genuine issues of material fact in this case, summary judgment may be granted despite the jury demand. *Accord McGraw v. Betz (In re*

*Bell & Beckwith),* 112 B.R. 863, 867 (Bankr. N.D.Ohio 1990).

19. Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995); *Miller v. FDIC,* 906 F.2d 972, 973 (4th Cir.1990).

■ 20. Summary judgment may properly be granted in favor of a Chapter 7 trustee who brings an action in a bankruptcy court pursuant to Section 723(a) against a general partner for the recovery of a partnership deficiency. *See Miller v. Spitz (In re CS Associates),* 160 B.R. 899 (Bankr.E.D.Pa. 1993) (court granted summary judgment in favor of Chapter 7 trustee who brought action under Section 723(a) against one of three general partners of debtor partnership); *McGraw v. Betz (In re Bell & Beckwith),* 112 B.R. 863 (Bankr.N.D.Ohio 1990) (court granted summary judgment in favor of Chapter 7 trustee who brought action under Section 723(a) against all general partners of debtor partnership for losses sustained due to fraud of one partner).

Based upon the foregoing opinion, the trustee's motion for summary judgment [P. 32] will be granted. The trustee will be directed to file a final calculation of the amount of the deficiency within fifteen (15) days hereof, whereupon a money judgment in that amount will be entered against the defendant.

Execution by the trustee upon the judgment will be stayed pending further order of this Court. The defendant will be afforded the opportunity of filing objections to claims on or before March 31, 1997. If no such objections are filed by the defendant by March 31, 1997, this Court will enter a final money judgment against him. Any objections to claims filed on or before that date will be subject to determination by this Court pursuant to applicable rules.

ORDER ACCORDINGLY.